**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 93-9089

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JAMES ROBERT BENBROOK, JR.
and STEVEN DWAIN SEXTON,

Defendants-Appellants.

Appeals from the United States District Court
for the Northern District of Texas

(December 2, 1994)

Before POLITZ, Chief Judge, GOLDBERG and DUHÉ, Circuit Judges.

POLITZ, Chief Judge:

James Robert Benbrook, Jr. and Steven Dwain Sexton appeal their convictions for unlawful possession of a listed chemical, 21 U.S.C. § 841(d)(2); Benbrook also appeals his conviction of using a firearm in relation to a drug trafficking offense, 18 U.S.C. § 924(c)(1). We affirm.

Background

In October of 1992 the Drug Enforcement Agency received a confidential tip, which was reinforced a few weeks later by

additional information from the same unnamed informant, about a clandestine drug laboratory. In December 1992, DEA agents performed a "creep"[1] on Benbrook's home in Forney, Texas in an effort to determine whether the manufacture of methamphetamines was taking place. That creep disclosed no telltale odors, sounds, or visible evidence of the manufacture of the contraband. In January 1993, following receipt of further information of suspicious activity from the same source, by now identified as Benbrook's ex-girlfriend Mary Carol Taylor, the DEA performed a second creep which proved to be as unproductive as the first.

Agents subsequently interviewed Taylor who advised that in the prior December she had seen in the house white powder she believed to be methamphetamine. Cooperating with the DEA, she later delivered three small rocks of methamphetamine she said were manufactured at Benbrook's home. In April 1993 she informed agents that Benbrook had obtained most of the chemicals necessary for more manufacture, and that production would begin shortly. Late on the night of April 14, Benbrook's auto was under surveillance by a DEA agent who requested assistance from the Mesquite police department to identify the driver. The local police responded, stopped the vehicle, and determined that Benbrook was the driver. A narcotics dog was called in and it alerted on the trunk, but no controlled substances were found. In the early morning hours of April 15

---

[1]Agents described a "creep" as a surreptitious approach to the outer perimeter of property on which methamphetamine production is suspected, with agents exercising their olfactory powers to detect signature odors, as well as other sensory efforts to see and hear what might prove relevant.

another creep disclosed odors and sounds consistent with the operation of a methamphetamine lab. Based on the cumulative information, a search warrant was sought and secured.

Upon execution of the warrant near midday, April 15, 1993, agents found Benbrook and Sexton sitting on a couch watching television. Precursor materials were found in the sink, in Benbrook's van, and in a wooden shed behind the house. Phenylacetic acid, the controlled substance charged in the indictment, was found in the locked van. Trace amounts of methamphetamine were found in glassware in the house and in the shed, which had been nailed shut. The shed contained the equipment necessary for the manufacture of methamphetamine. It was not then operational but could be made so in a few hours. The search also uncovered copious notes and literature on the manufacture of both amphetamines and methamphetamines.

In the search of the house, the agents found a disassembled 9mm pistol and one bullet on a shelf in the room in which Benbrook and Sexton were located. Upstairs, under Benbrook's bed, they found two loaded pistols, and in a closet they found a pistol, a mini 14 ranch rifle, a 12 gauge shotgun, and a 44 magnum lever-action rifle. In addition, a pistol was found in Sexton's truck.

Benbrook and Sexton were charged with both the unlawful possession of contraband and the firearm infraction. The jury returned verdicts of guilty on both counts against both defendants; the district court granted a post-trial motion acquitting Sexton on

the firearm count.

On appeal Benbrook challenges the validity of the search and the evidence it produced, the refusal of the trial court to sever the trials, the admission of evidence of extrinsic offenses, and the sufficiency of the evidence on both counts. Sexton challenges the sufficiency of the evidence and the tainting effect of the evidence relating to the firearm charge of which he ultimately was acquitted.

Analysis

Benbrook first contends that the evidence acquired in the execution of the search warrant should have been supressed because the initiating affidavit was insufficient. He faults the affidavit for not informing the magistrate judge that the odors described can linger for months and for failing to apprise the authorities that Taylor had given information on two prior occasions which had proven unfounded. He also points to trial testimony contrary to Taylor's assertion that she had been in the house in December 1992.

Under the good faith exception to the exclusionary rule, officers may rely on a warrant supported by an affidavit alleging more than wholly conclusionary statements even if the affidavit, subsequently assessed, is found insufficient to establish probable cause.[2] The instant affidavit, however, easily passes muster.[3]

---

[2]**United States v. Satterwhite**, 980 F.2d 317 (5th Cir. 1992).

[3]The affidavit included information from Taylor describing Benbrook's manufacturing process and the presence of methamphetamine in the home. It included the information gathered by the DEA during its third creep, that is, the presence of odors and noises consistent with the manufactuare of methamphetamine. Also included

4

Benbrook maintains that the good faith exception should not be applied because in making the affidavit the DEA agents omitted material information and included false information.[4]  To prevail in this argument Benbrook must make a substantial showing that the affiant made the statement, or omission, knowingly or with reckless disregard for the truth.  *In limine*, the district judge found that Benbrook had failed to make the required preliminary showing warranting a hearing on the matter.  At the close of the prosecution's case, the judge found that any statement or omission by the affiant that misled the magistrate judge was neither knowing nor intentional.  We find nothing in the record to indicate that either of these rulings was erroneous.

Benbrook next contends that the trial court erred in refusing to sever his trial from Sexton's, maintaining that evidence of extrinsic offenses by Sexton prejudiced his trial.  We need not tarry long here.  Defendants indicted together should be tried together absent a serious risk of compromising a specific trial right or of preventing the jury from making a reliable judgment about guilt or innocence.[5]  The two witnesses attesting to

---

was an account of the narcotics dog's alert on Benbrook's car.  See **United States v. Brown**, 941 F.2d 1300 (5th Cir.), cert. denied, 112 S.Ct. 648 (1991).

[4]**United States v. Leon**, 468 U.S. 897 (1984) (citing **Franks v. Delaware**, 438 U.S. 154 (1978)); **United States v. Cronan**, 937 F.2d 163 (5th Cir. 1991) (noting that omissions as well as misstatements may require suppression of evidence under **Franks**).

[5]See **Zaifiro v. United States**, _____ U.S. _____, 113 S.Ct. 933 (1993); **United States v. Arzola-Amaya**, 867 F.2d 1504 (5th Cir.), cert. denied, 493 U.S. 933 (1989).

extrinsic evidence against Sexton, testified about substantially similar evidence against Benbrook.  We perceive nothing especially complex about either the evidence or the proceedings to suggest that the district court's instruction to the jury on the use of extrinsic evidence was ineffective in preventing prejudice to Benbrook.  We find no abuse of discretion by the district court in denying the motion to sever.[6]

Benbrook also faults the allowance of evidence about his prior drug and weapons activities.  Under Fed.R.Evid. 404(b), before such evidence can be admitted the trial court must first find that the evidence is relevant to an issue other than the defendant's character.[7]  Here, the court found that the extrinsic offenses were relevant to Benbrook's knowledge, motive, plan, opportunity, and intent to possess the controlled substance with the intent to manufacture methamphetamine.  Past drug activities involving methamphetamine logically are relevant to what Benbrook intended to do with the methamphetamine precursor chemicals found in his home.[8]  The same applies to prior gun activities and the firearm charge.  The district court did not abuse its discretion in finding the

---

[6]**United States v. Martinez-Perez**, 941 F.2d 295 (5th Cir. 1991), cert. denied, 112 S.Ct. 1295 (1992).

[7]**United States v. Beechum**, 582 F.2d 898 (5th Cir. 1978) (*en banc*), cert. denied, 440 U.S. 920 (1979).

[8]**Beechum**, 582 F.2d at 911 ("Where the evidence sought to be introduced is an extrinsic offense, its relevance is a function of its similarity to the offense charged.").  Mary Elizabeth Benbrook, Benbrook's estranged wife, testified that he manufactured methamphetamine every two or three months while they were dating and during their marriage.

6

extrinsic offenses relevant to Benbrook's intent.[9]

The district court must also find that the probative value of the past offenses is not outweighed by the danger of unfair prejudice to the defendant.[10] The government had the burden of proving Benbrook's intent to manufacture methamphetamine and his use of a firearm in relation to drug trafficking. We perceive no error in the court's finding that the probative value of the extrinsic offense evidence was not outweighed by its prejudice to the defendant.[11]

Benbrook next asserts that the evidence was insufficient to support the guilty verdicts on his two counts. In our review we inquire whether a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt, viewing the evidence in the light most favorable to the verdict.[12] "The evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt."[13] In this inquiry, we resolve all questions of credibility

---

[9]**United States v. Williams**, 900 F.2d 823 (5th Cir. 1990) (reviewing relevance prong of 404(b) test under the abuse of discretion standard).

[10]Fed.R.Evid. 403; **Beechum.**

[11]**Id.** at 914 ("[V]alue must be determined with regard to the extent to which the defendant's unlawful intent is established by other evidence, stipulation, or inference.").

[12]**United States v. Faulkner**, 17 F.3d 745 (5th Cir.), cert. denied, 115 S.Ct. 193 (1994).

[13]**United States v. Maseratti**, 1 F.3d 330, 337 (5th Cir. 1993), cert. denied, 114 S.Ct. 1096 (1994).

7

in favor of supporting the jury's verdict.[14]

Benbrook first contends that there is insufficient evidence to support his conviction under 21 U.S.C. § 924(c)(1). To sustain a firearms conviction the government must prove that the defendant used or carried a firearm in relation to a drug trafficking offense.[15] Benbrook argues that the government failed to prove he "used" a firearm in relation to the drug trafficking charge, contending that by virtue of the location of the firearms upstairs and the government admissions that he made no effort to reach a gun, he could not and did not "use" a firearm. We are not persuaded.

In **United States v. Thomas**,[16] we held that a jury could find that an unloaded firearm stored in a gym bag on the second floor of a house was used in relation to drug trafficking. Noting that "[t]he fact that a weapon is `unloaded' or `inoperable' does not insulate a defendant from the reach of §924(c)(1)," we held that the government is required to show only that the firearms in question were available to provide protection to the defendant's drug activities.[17] The **Thomas** decision concluded that the presence

---

[14]**United States v. Gallo**, 927 F.2d 815 (5th Cir. 1991).

[15]**United States v. Onick**, 889 F.2d 1425 (5th Cir. 1989). The district court acquitted Benbrook on the firearm charge to the extent that he was charged with "carrying" a weapon in relation to a drug offense.

[16]12 F.3d 1350 (5th Cir.), cert. denied, 114 S.Ct. 1861 (1994).

[17]**Id.** at 1362 (citing **United States v. Contreras**, 950 F.2d 232, 241 (5th Cir. 1991), cert. denied, 112 S.Ct. 2276 (1992)); **United States v. Pace**, 10 F.3d 1106, 1117 (5th Cir. 1993) ("`Use' does not require the government to prove actual use such as the discharging

8

of loaded firearms at a defendant's home where drugs, money, and ammunition are also found is "sufficient to establish the use of a firearm as an integral part of the drug trafficking crime."[18]

In the case at bar Benbrook's home contained chemicals, methamphetamine equipment, methamphetamine residue in glassware, and large amounts of cash. The room in which Benbrook was found contained a disassembled pistol and a bullet. Pistols, rifles, and a shotgun were found upstairs. Taylor testified that on prior occasions Benbrook carried a firearm while he had drugs in his possession. Viewing all of the evidence in the light most favorable to the jury verdict, we entertain no doubt about its adequacy.[19]

We reach the same conclusion about the adequacy of the evidence supporting the 21 U.S.C. § 841(d)(2) conviction. To convict on this charge the government had to prove beyond a reasonable doubt that Benbrook knowingly and willfully possessed phenylacetic acid, knowing or having cause to believe that it would be used to manufacture methamphetamine.

Benbrook initially faults the evidence that the substance

---

of or brandishing of the weapon. The government may meet its burden by simply showing that the weapons facilitated, or could have facilitated, the drug trafficking offense."), cert. denied, 114 S.Ct. 2180 (1994).

[18]**Thomas**, 12 F.3d at 1362; **United States v. Molinar-Apodaca**, 889 F.2d 1417 (5th Cir. 1989).

[19]See **United States v. Capote-Capote**, 946 F.2d 1100, 1104 (5th Cir. 1991) ("Weapons in the home may facilitate a drug crime because the defendant could use the guns to protect the drugs."), cert. denied, 112 S.Ct. 2278 (1992).

found in his van was in fact phenylacetic acid.  Neither of the two testifying DEA chemists made a conclusive identification, but a DEA agent did.  Benbrook views this as insufficient as a matter of law. We do not.   In **United States v. Osgood**,[20] we held that the identification of a controlled substance could be established by circumstantial evidence, including lay witness testimony, as long as the drug's identity is established beyond a reasonable doubt.

In the instant case, the DEA agent detailed his experience in searching clandestine methamphetamine laboratories.  When asked to identify the substance found in back of Benbrook's van, he stated that in his opinion the substance was phenylacetic acid.  One chemist testified to the presence of phenylacetic acid when pressed by the defense to respond to the defense assertion that materials for manufacturing methamphetamine were not present in Benbrook's home.  Reasonable jurors, acting reasonably, could conclude that all elements of the section 841(d)(2) charge were proven beyond a reasonable doubt.  Benbrook's contention that he lacked the ability to manufacture the drug because certain precursors were missing is unavailing.  The statute does not require the possessor to be either in the process of manufacturing the drug or presently able

---

[20]794 F.2d 1087 (5th Cir.), cert. denied, 479 U.S. 994 (1986). Benbrook's attempt to distinguish **Osgood** on the ground that it allowed lay witness testimony to identify drugs but not other chemical compounds is unavailing.  His distinction is more appropriately an attack on the credibility to be given such an identification.  Depending on how distinct the characteristics of a compound are, identification by a lay person may be more or less persuasive.  In this case, we resolve the issue of agent Hardwick's credibility in favor of the verdict.  **Gallo.**

to do so to be guilty of this charge.[21]

We find no reversible error or defect in Benbrook's convictions and they are affirmed.

Sexton challenges the sufficiency of the evidence supporting his conviction under 21 U.S.C. § 841(d)(2), asserting that the government failed to demonstrate that he had possession of the phenylacetic acid found in Benbrook's van. Sexton contends he was merely present at Benbrook's home when the DEA arrived and that such presence, standing alone, is insufficient to support his conviction.[22]

Possession under section 841(d)(2) may be actual or constructive and the proof thereof may be by direct or circumstantial evidence.[23] In order to establish constructive possession the government must prove ownership or dominion or control over either the substance in question or the premises where found. Stated in other terms, the government must establish adequate nexus between the accused and the prohibited substance.[24]

The record reflects that Sexton was found at Benbrook's home when the DEA search uncovered the phenylacetic acid. Mere presence

---

[21]See **United States v. Hyde**, 977 F.2d 1436 (11th Cir. 1992) (explaining that section 841(d)(2) presumes that the final product has not yet been manufactured), cert. denied, 113 S.Ct. 1948 (1993).

[22]**Onick.**

[23]**United States v. Pigrum**, 922 F.2d 249 (5th Cir.), cert. denied, 500 U.S. 936 (1991).

[24]**United States v. Rojas**, 537 F.2d 216 (5th Cir. 1976), cert. denied, 429 U.S. 1061 (1977).

11

at the home of another when prohibited substances are found cannot, alone, sustain a finding of constructive possession.  Such presence, however, is evidence that the jury may consider when determining Sexton's guilt or innocence.[25]  Sexton's presence does not stand alone.  Benbrook's wife testified that Benbrook and Sexton were partners in manufacturing methamphetamine.  She also testified that she witnessed Sexton carrying chemical containers to the laboratory in the shed and otherwise assisting in the production of the methamphetamine.  She added that Sexton often would wash or change clothes at the Benbrook home to get rid of the smell of the precursor chemicals.  She stated that Sexton assisted in the manufacture of the methamphetamine in exchange for a portion of production.  Benbrook's former girlfriend testified that she had seen Sexton shave methamphetamine powder from "rocks" of the material, and she attested to witnessing Sexton using methamphetamine and offering it to others.

In **United States v. Willis**,[26] we held that such extrinsic evidence was admissible under Fed.R.Evid. 404(b) to prove intent to possess constructively a prohibited substance.  The probative value of such depends on the similarity between the prior conduct and the charged conduct.[27]  Here, Benbrook's wife testified about Sexton's exercise of control over the precursor materials in the past, suggestive of his intent to exercise such control over the subject

---

[25]**United States v. Magee**, 821 F.2d 234 (5th Cir. 1987).

[26]6 F.3d 257 (5th Cir. 1993).

[27]**Beechum.**

12

phenylacetic acid.[28]  The testimony of Benbrook's wife and former girlfriend provide a motive and an explanation for Sexton's presence at the Benbrook home.  Sexton disputes the credibility of this testimony; the jury obviously did not.  We must defer to that credibility assessment.[29]

The factual situation presented herein is distinguishable from that in **Onick** where we held that the defendant's presence in the house containing narcotics was an insufficient basis to find constructive possession.  In that case, the jury was left to infer guilt from the defendant's mere presence in the house where the drugs were located and the defendant's association with the resident.  Here, the government has shown both of those factors as well as extrinsic evidence of intent to assert dominion and control over the precursor chemical.  Unlike the jury in **Onick**, Sexton's jury did not have to speculate in order to convict.  Viewing the evidence in a light most favorable to supporting the verdict, we conclude that a reasonable jury could find beyond a reasonable doubt that Sexton had joint constructive possession with Benbrook over the phenylacetic acid.

In his second point on appeal, Sexton claims that the district court erred in allowing extrinsic evidence of gun possession under Fed.R.Evid. 404(b) because he ultimately was acquitted of the

---

[28]**Willis** (finding convictions for possession and possession with intent to distribute highly probative on the issue whether defendant intended to exercise dominion and control over controlled substances found in his presence but not in his actual possession); **United States v. Yeagin**, 927 F.2d 798 (5th Cir. 1991) (accord).

[29]**Gallo.**

13

firearm charge.  We find this assignment of error to be without merit.  Without a showing that the charge was brought in bad faith, evidence admissible, when introduced, in a fair trial of that charge cannot serve as the basis for reversible error notwithstanding Sexton's post-verdict acquittal.[30]

The convictions of Benbrook and Sexton are AFFIRMED.

---

[30]**United States v. Carter**, 953 F.2d 1449 (5th Cir.), <u>cert</u>. <u>denied</u>, 112 S.Ct. 2980 (1992).