**P U B L I S H**

**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 93-1779

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

GOWON JACK MUSA, a/k/a Jack
Spencer, a/k/a Ike,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Texas

(February 10, 1995)

Before POLITZ, Chief Judge, HIGGINBOTHAM and DeMOSS, Circuit
Judges.

POLITZ, Chief Judge:

Gowon Jack Musa appeals his conviction for conspiracy to import in excess of one kilogram of heroin in violation of 21 U.S.C. §§ 952(a), 960, and 963. We affirm.

Background

On November 18, 1992, agents of the Drug Enforcement Administration and the United States Customs Service arrested Musa, a/k/a Jack Spencer, for conspiring to import in excess of one kilogram of heroin. His arrest followed an intensive investigation

into the recruitment of individuals in the Dallas area to smuggle heroin from source countries,[1] such as Thailand or Burma, via non-source countries, such as Switzerland or Austria.

The investigation revealed that Musa's alleged coconspirators would recruit couriers, ostensibly to smuggle diamonds into the United States from Switzerland or Austria. Once recruited, the couriers would fly to Los Angeles where Musa would help them obtain passports, airplane tickets, and cash to cover travel expenses. One pair of couriers would then travel to Thailand or Burma to retrieve false-sided suitcases containing heroin for transport to Austria or Switzerland. Upon arrival in the prearranged non-source country, the couriers would exchange the bags with another set of couriers who had traveled directly to the non-source country. That pair would then bring the bags into the United States, avoiding the heightened scrutiny that the DEA and Customs place on persons and packages arriving from source countries. Once back in the United States, the couriers turned the bags over to Musa or other coconspirators and received payment via wire fund transfers arranged by Musa.

On the day of Musa's arrest, agents approached him as he exited his 1989 red Chevrolet Corvette convertible outside a Denny's restaurant in Hawthorne, California. The agents read Musa his **Miranda** rights, made a brief search of his Corvette, and transported him to a local police station for questioning. One of

---

[1]A "source country" is one recognized by the DEA as a primary location for the manufacture and distribution of Southeast Asian heroin.

the agents drove the Corvette to the police station where Musa signed a waiver-of-rights form and a form consenting to the search of his Corvette and his apartment in Culver City, California.

Agents drove Musa's car to his apartment which they searched for evidence implicating Musa in the heroin smuggling operation. After collecting various items from the apartment, agents drove Musa's car to the federal building in Los Angeles where it was searched. The next morning agents again searched the Corvette, finding a Swiss Air Global Hotel Guide on which Musa had written[2] a reference to "The Heroin Connection," a television documentary on the recruitment of individuals in the Dallas area to smuggle heroin into the United States through non-source countries.[3] Musa had also written a phone number for Donald Iwegbu, an alleged coconspirator who had admitted that the goal of the operation was to smuggle heroin into the United States.

Musa was indicted for conspiring to import in excess of one kilogram of heroin in violation of 21 U.S.C. §§ 952(a), 960, and 963. He was found guilty by a jury and was sentenced to 324 months in prison followed by five years of supervised release. Musa timely appealed, challenging the admission into evidence of the Hotel Guide, the sufficiency of the evidence supporting his conviction, and the district court's upward adjustment of his base

---

[2]An expert document examiner compared the writing on the Hotel Guide with an exemplar taken from Musa and testified that Musa wrote both.

[3]Written on the Hotel Guide were the name of the show, an address for ordering transcripts, and an "800" number for ordering a videotape copy.

offense level on the basis that he was an organizer or leader in the conspiracy.

## Analysis

Musa contends that the district court erred in denying his motion to suppress the admission of the Hotel Guide. Contending that the initial warrantless seizure of his Corvette at the time of his arrest was illegal, he maintains that the Hotel Guide was inadmissible as the fruit of an illegal search. We review this contention for plain error; there was no objection at trial to the initial seizure of the Corvette.[4] Musa objected only on the basis that the search of his car was not done with his consent or "in compliance with any inventory or forfeiture proceedings."[5]

To find plain error we must conclude that there was an error, which was so conspicuous that the trial judge and prosecutor were derelict in countenancing it, which compromised a substantial right

---

[4]Fed.R.Crim.P. 52(b). See **United States v. Calverley**, 37 F.3d 160 (5th Cir. 1994) (*en banc*), petition for cert. filed (Jan. 18, 1995) (No. 94-7792).

[5]To preserve an issue for review on appeal, the defendant's objection must fully apprise the trial judge of the grounds for the objection so that evidence can be taken and argument received on the issue. **United States v. Maldonado**, No. 94-60234, 1995 WL 3841 (5th Cir. Jan. 6, 1995) (applying plain error review to fourth amendment claim not specifically brought to attention of district court). Musa objected to the admission of the Hotel Guide on the grounds set forth in his pretrial motion to suppress. By the terms of that motion, and statements in open court, this objection applies only to the "search" of the Corvette; it does not encompass the existence of probable cause at the time of the car's seizure with sufficient specificity "to present the trial court with a sufficient basis to identify and correct the purported infirmity." **United States v. Berry**, 977 F.2d 915, 918 (5th Cir. 1992). This is particularly true in light of the complete absence of discussion on this issue at the pretrial suppression hearing.

of the defendant, and seriously affected the fairness, integrity, or public reputation of the judicial proceedings.[6]

We cannot say that it is clear that the district court erred in the admission of the evidence. Although the government did not have a warrant for the seizure of the Corvette at the time of Musa's arrest, we have upheld the warrantless seizure of cars for forfeiture under 21 U.S.C. § 881 when there was probable cause to believe that the vehicle had been used to facilitate the sale, receipt, or possession of controlled substances.[7] The probable cause necessary to support a seizure of a vehicle under that statutory provision is "a reasonable ground for belief of guilt, supported by less than *prima facie* proof but more than mere suspicion."[8] Contraband need not be found in the car provided the vehicle facilitated a sale, receipt, or possession of a controlled substance.[9] The government introduced substantial evidence, gathered prior to the seizure at issue, of Musa's use of the Corvette in preparing couriers for their trips to smuggle heroin.[10]

---

[6]**Calverley.**

[7]**United States v. One 1978 Mercedes Benz, Four-Door Sedan, VIN: 116-036-12-004084**, 711 F.2d 1297 (5th Cir. 1983).

[8]**United States v. One 1978 Chevrolet Impala, VIN-1L69U8S156817**, 614 F.2d 983, 984 (5th Cir. 1980).

[9]See **United States v. One 1979 Mercury Cougar XR-7, VIN: 9H93F720727**, 666 F.2d 228, 230 (5th Cir. 1982) ("[F]orfeiture is proper if the car is used `in any manner' to facilitate the sale or transportation of a controlled substance.").

[10]Melanie Applegate testified that Musa transported her in the Corvette to a travel agent to purchase tickets to Switzerland and to the passport office. Ricky Medack testified that Musa drove the Corvette to meet him in Los Angeles to discuss getting a passport.

Having held that similar preparations for a smuggling operation supply probable cause for a warrantless seizure of a car,[11] we are not prepared to accept the suggestion that there was error.

But even if we assume error, such error clearly was not plain or conspicuous in light of the substantial evidence of Musa's use of the Corvette in outfitting couriers for their smuggling trips and our precedents supporting the conclusion that such would be sufficient to establish probable cause for seizure for forfeiture purposes. Accordingly, we proceed no further with the plain error analysis;[12] the district court's admission of evidence found in the second search of Musa's seized Corvette, despite the car's initial warrantless seizure, was not plain error.

At oral argument Musa also contended that the second search of the Corvette was illegal because the agents lacked a warrant or legal justification. The only issue raised in brief, however, is the legality of the initial seizure. Indeed, Musa maintains in brief that because the initial seizure was illegal, whether he consented to the search or whether the search was a valid inventory search were "not in issue." Although we liberally construe briefs in determining issues presented for review, issues which are not

_____

Kelly Dillard testified that Musa drove the Corvette to meet a group of couriers and give them directions on what they were to do. Melissa Martin testified that Musa drove "a little red RX-7" when he brought her money and airplane tickets prior to her overseas trip.

[11]**One 1979 Mercury Cougar XR-7, VIN: 9H93F720727.**

[12]**Maldonado**, 1995 WL 3841, *6 (proceeding no further in plain error analysis when error clearly not plain).

6

raised, and those expressly disavowed, are not considered on appeal.[13] Musa's remaining challenges to the admissibility of the Hotel Guide are not properly before us.

Musa next contends that the evidence is insufficient to sustain the verdict. It is our task to inquire whether a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt, viewing the evidence in the light most favorable to the verdict.[14] We are mindful that the evidence need not exclude every reasonable hypothesis of innocence or be totally inconsistent with every conclusion except that of guilt.[15] In our review we must resolve all credibility determinations in favor of supporting the jury's verdict.

To sustain a conviction for conspiracy to import in excess of one kilogram of heroin, the government had to prove beyond a reasonable doubt that Musa (1) knew that the conspiracy existed, (2) knew of its purpose or object, and (3) willfully participated therein.[16] Musa maintains that the government failed to show that he knew that the object of the alleged conspiracy was the importation of heroin. In arguing that the evidence proved only

---

[13]See **Atwood v. Union Carbide Corp.**, 847 F.2d 278, 280 (5th Cir. 1988) ("[I]ssues not briefed, or set forth in the list of issues presented, are waived."), cert. denied, 489 U.S. 1079 (1989).

[14]**United States v. Benbrook**, 40 F.3d 88, 93 (5th Cir. 1994).

[15]**Id.** (citing **United States v. Maseratti**, 1 F.3d 330, 337 (5th Cir. 1993), cert. denied, 114 S.Ct. 1096 (1994)).

[16]**United States v. Palella**, 846 F.2d 977 (5th Cir.), cert. denied, 488 U.S. 863 (1988).

7

that he believed that the object of the conspiracy was to smuggle diamonds, he points out that no heroin was found on his person or in his apartment or car, and that no one testified that he ever discussed heroin.

We first note that a jury may infer the knowledge and participation elements from circumstantial evidence such as the concert of action of the parties.[17]  The government introduced evidence that Musa helped couriers obtain passports and tickets to source countries for heroin.  One of the couriers testified that Musa gave her directions to pick up a package from a man in Geneva and that man identified the contents of the package as heroin.  Two couriers testified that Musa instructed them to pack "the stuff" on their bodies in girdles for transport into the United States and that "the stuff" was a white powder; these same witnesses also testified that Musa told them that "they [Musa and alleged coconspirators] had to get rid of it [the white powder] or do whatever they had to do to get their money" before the couriers could get paid.  The two couriers also testified that Musa ultimately took possession of the duffle bag containing the powder that they smuggled into the United States.  The government introduced evidence that Musa helped a courier obtain his passport in Los Angeles and that Austrian police shortly thereafter arrested this same courier for possession of over 3400 grams of heroin.

The government also introduced evidence of Musa's erratic,

---

[17]**United States v. Cardenas**, 9 F.3d 1139 (5th Cir. 1993), <u>cert</u>. <u>denied</u>, 114 S.Ct. 2150 (1994); **United States v. Restrepo-Granda**, 575 F.2d 524 (5th Cir.), <u>cert</u>. <u>denied</u>, 439 U.S. 935 (1978).

evasive, and nervous behavior as evidence of his guilty knowledge.[18] A courier testified that Musa became very nervous after learning that some couriers had been searched at the airport. Another courier testified that Musa told a courier not to worry when asked if the smuggling actually involved drugs.

The government also provided evidence of Musa's guilty knowledge by introducing the Hotel Guide containing his written reference to "The Heroin Connection" documentary and Donald Iwegbu's telephone number.[19] Testimony identified Iwegbu as one of the recruiters in the Dallas area who admitted that the object of the operation was to smuggle heroin. The jury had before it ample evidence of an awareness on the part of Musa that the object of the conspiracy was to import heroin. Viewing the evidence in a light most favorable to the verdict, we must conclude that a reasonable jury could have found Musa guilty of conspiring to import in excess of one kilogram of heroin.

In his final assignment of error, Musa asserts that the district court erred in finding that as an organizer or leader of the conspiracy he was subject to a four-level increase in the sentencing base offense level. U.S.S.G. § 3B1.1 provides that to be eligible for such an increase, the defendant must be an organizer or leader of a criminal activity that involved five or

---

[18]**Cardenas; United States v. Hernandez-Palacios**, 838 F.2d 1346 (5th Cir. 1988).

[19]The government also connected Musa to the smuggling operation by introducing telephone records from his apartment showing calls to Thailand, Switzerland, and Texas.

more participants or was otherwise extensive.[20]  Musa insists that the evidence supported, at most, the conclusion that he supervised the obtaining of passports and hotel rooms in Los Angeles for couriers.

We review the finding under the clear error standard.[21]  When determining such, the district court should consider, among other things, a defendant's exercise of decision-making authority, the nature of his participation in the offense, the degree of participation in planning the offense, and the degree of control or authority exercised over others in the conspiracy.  The evidence produced at trial, discussed above, adequately supports the district court's finding that Musa was an organizer or leader of the conspiracy.[22]

Finding no error, we AFFIRM the conviction and sentence.

---

[20]U.S.S.G. § 3B1.1(a).

[21]**United States v. Watson**, 988 F.2d 544 (5th Cir. 1993), <u>cert</u>. <u>denied</u>, 114 S.Ct. 698 (1994).

[22]U.S.S.G. § 3B1.1, Application Note 4.  There must also be at least five participants subject to control or authority.  The number of recruiters and couriers reflected in the evidence far exceeds this number.