UNITED STATES of America

v.

**John Patrick GORDON.**

**No. EP–94–CR–260–DB(3).**

United States District Court,
W.D. Texas,
El Paso Division.

Oct. 26, 1995.

Joe Galenski, Assistant United States Attorney, El Paso, Texas, for plaintiff.

Alan P. Caplan, San Francisco, California, Carlos Villa, El Paso, Texas, for defendant.

### *ORDER*

BRIONES, District Judge.

On this day, the Court considered Defendant's Motion to Suppress Evidence Seized From His 1994 Chevrolet Pick–Up Truck, filed on February 15, 1995, in the above-captioned cause. The government's Response was filed on March 14, 1995. This

Court held a hearing in the matter on July 27, 1995. Defendant's filed a Supplementary Memorandum in Support of their motion on September 20, 1995. The government filed its Response on October 5, 1995. After due consideration, the Court is of the opinion that the matter shall be resolved as set forth below.

## STATEMENT OF FACTS

On August 9, 1993, a United States Customs Drug Storage Facility ("DSF"), located in El Paso, Texas, was burglarized. An inventory of the contents of the facility revealed that approximately 356 pounds (162 kilograms) of cocaine had been stolen. Customs investigators determined that the alarm system had been disabled in a manner indicating that someone with general knowledge of security systems was involved. The investigators also learned that entry into the facility was made by way of a skylight.

In October, 1993, a United States Customs Special Agent received information from an individual concerning the theft of the cocaine from the DSF. The individual stated that another individual known as Keith Ludwig ("K. Ludwig") was responsible for disabling the alarm system at the storage facility. On June 13, 1994, another confidential informant advised Customs Agents that he/she was told by Nicholas Ludwig ("N. Ludwig"), that he, N. Ludwig, had participated in a burglary in El Paso, Texas, in which approximately 160 kilograms of cocaine had been stolen. N. Ludwig also told the informant that his brother, K. Ludwig, had disabled the alarm system at the location where the burglary was committed. N. Ludwig also told the confidential informant that the cocaine stolen from the DSF in El Paso had been delivered to an individual named John, who resided in the St. Petersburg, Florida area.

On July 6, 1994, N. Ludwig was arrested in Tampa, Florida, in possession of 20 kilograms of cocaine, not related to the cocaine stolen from the El Paso DSF. Post arrest statements made by N. Ludwig were that the burglary of the DSF was committed by K. Ludwig (N. Ludwig's brother) and one John Gordon ("Gordon"). N. Ludwig admitted that he had transported approximately 60 kilograms of the cocaine stolen from the DSF to Gordon in Tampa, Florida. N. Ludwig stated that he had made this trip in a red pick-up truck, owned by Gordon, sometime in October/November/December of 1993. The agents did not become aware until after Gordon's arrest that Gordon had purchased a red pick-up truck on November 24, 1994.

On July 8, 1994, Customs Agents and officers of the Pinellas County Sheriff's Department were conducting surveillance in the area of 4908 Creekside Blvd., Clearwater, Florida. Special Agent Robert Pizurro observed two males inside a red pick-up truck arrive and park directly in front of the main entrance to the building. Special Agent Pizurro recognized the driver of the truck as Gordon. A vehicle registration check revealed that the truck was in fact registered to Gordon. After approximately five to ten minutes, Gordon exited the building through the main entrance. As he approached his truck, Gordon was arrested pursuant to an arrest warrant issued in the instant case. Gordon was patted down and officers obtained the keys to his red pick-up truck. The pick-up truck was seized pursuant to 21 U.S.C. § 881. The basis for the seizure was that the pick-up had been used to transport cocaine. The pick-up was transported to a closed compound adjacent to the United States Customs Office in Tampa, Florida, where it was inventoried pursuant to a Customs Service Directive regarding inventory searches. The Directive was issued on April 17, 1991.

Among other things, the inventory search of Gordon's pick-up truck revealed an open attaché case full of documents. Pursuant to the Customs Directive, Special Agent Pizurro proceeded to inventory the contents of the attaché case. The contents of the attaché case included documents which showed Gordon's involvement in illegal narcotics activity. Gordon challenges the inventory search of his pick-up truck, and the attaché case, as violating his Fourth Amendment right to be free from unreasonable searches and seizures, and seeks to suppress any and all evidence seized from the pick-up truck as well as all evidence seized from the attaché case.

## ANALYSIS OF THE MERITS

Defendant's first argument is that the agents had insufficient probable cause to seize his pick-up truck in that the seizure was based upon the uncorroborated information provided by N. Ludwig. This argument fails because the agents did have sufficient probable cause to seize the vehicle, and the information provided by N. Ludwig was corroborated by other information received by the agents.

■ A vehicle may be seized pursuant to 21 U.S.C. § 881 when there is probable cause to believe that the vehicle has been used to facilitate the sale, receipt, or possession of a controlled substance. *United States v. Musa,* 45 F.3d 922 (5th Cir.1995). The probable cause necessary to support such a seizure is a "reasonable ground for belief of guilt, supported by less than prima facie proof but more than mere suspicion". *Musa* at 924, citing *United States v. One 1978 Chevrolet Impala, VIN–IL69U8S156817,* 614 F.2d 983, 984 (5th Cir.1980). If sufficient probable cause existed, then the seizure was proper under the aforementioned cases.

■ Defendant attacks the probable cause issue by alleging that probable cause in this case was insufficient in that it was based upon the "uncorroborated" statements of N. Ludwig. However, the Court today finds that the statements made by N. Ludwig were, in fact, corroborated. The information related by N. Ludwig to Special Agent Pizurro regarding K. Ludwig's role in the offense was corroborated by a confidential informant who stated that K. Ludwig had disabled the alarm system at the El Paso DSF. This led Special Agent Pizurro to believe that N. Ludwig was being truthful. N. Ludwig's information regarding Gordon's pick-up truck was corroborated by the fact that the actual pick-up matched the description provided by N. Ludwig, and that a license plate check revealed that the pick-up belonged to Gordon. Clearly, the information provided to the agents by N. Ludwig was corroborated sufficiently that the requisite probable cause to seize the vehicle was established.

■ Defendant also argues that Agent Pizurro's inventory of the attaché case constituted an illegal investigative search for evidence. However, the inventory of the attaché case, performed by Agent Pizurro, was accomplished pursuant to a Customs Service Directive and established Customs Service Procedures ("Directive").[1] In *United States v. Andrews,* the Fifth Circuit held that "cases dealing with inventory searches have required that such searches be conducted according to standard regulations and procedures, consistent with the proper purpose of a noninvestigative search". 22 F.3d 1328, 1334 (5th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 346, 130 L.Ed.2d 302 (1994). *See also South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); *Colorado v. Bertine,* 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987). The inventory of the attaché case in this instance, was properly performed pursuant to the standard regulations and procedures of the Customs Service. Further, the inventory of the attaché case was not conducted for purposes of investigation; rather, it was performed for the legitimate purpose(s) of locating valuables for storage and/or securing dangerous items.

If the inventory of the attaché case were a mere pretext in order to conduct an investigative search, the inventory search would be unlawful. The mere fact, however, that a legitimate inventory search may also benefit an investigation does not invalidate an inventory search. *United States v. Orozco,* 715 F.2d 158 (5th Cir.1983); *United States v. Frank,* 864 F.2d 992 (3rd Cir.1988); *Wagner v. Higgins,* 754 F.2d 186 (6th Cir.1985). *See also Andrews* at 1334. In *Andrews* the Court found that an inventory search of a vehicle, which included a search of a red spiral notebook containing two diagrams and several names, was appropriate because it was consistent with police policy. *Id.* at 1336. The Court held that "[o]pening a notebook, to determine whether valuables might be found between its pages, is consistent with [police] policy requiring an inventory search to protect the city from claims of lost property". *Id.* at 1335.

---

**1.** Customs Service Directive Regarding Inventory Searches. Policies and Procedures Manual, No. 5230–14, Department of the Treasury, April 17, 1991.

It is clear to this Court that the inventory search of the attaché case, found in the seized pick-up truck, was not a "mere pretext" for an investigative search. The Customs Agents were performing the inventory pursuant to and consistent with a valid Customs Service Directive, and established Customs policies. The agents were clearly searching for valuables and/or dangerous items in order to protect themselves, and the owner's property. The simple fact that the inventory search of the attaché case benefitted the agents' investigation does not invalidate the inventory search.

For the reasons set forth above, the Court finds that Defendant's Motion to Suppress Evidence should be Denied.

Accordingly, it is hereby **ORDERED, ADJUDGED,** and **DECREED** that Defendant's Motion to Suppress Evidence is **DENIED.**