# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-11036

United States Court of Appeals
Fifth Circuit

**FILED**
September 28, 2016

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

CURTIS SEALY,

Defendant - Appellant

Appeals from the United States District Court
for the Northern District of Texas
USDC No. 4:15-CR-119-1

Before BENAVIDES, HAYNES, and GRAVES, Circuit Judges.

PER CURIAM:[*]

Curtis Sealy was convicted of one count of being a felon in possession of a firearm (in violation of 18 U.S.C. § 922(g)(1)) and filed this appeal to challenge his sentence[1] on the grounds that the district court erred in setting

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] Under plain error review, Sealy also challenges his conviction arguing that his conviction is unconstitutional because it falls outside the government's power to regulate commerce; he also argues that the indictment failed to allege his knowledge that the firearm travelled in interstate commerce. As Sealy acknowledges, these arguments have been foreclosed by our precedent. *United States v. Alcantar*, 733 F.3d 143, 145-46 (5th Cir. 2013); *United States v. Rose*, 587 F.3d 695, 705 (5th Cir. 2009). We thus affirm his conviction.

No. 15-11036

Sealy's base offense level at 20 pursuant to United States Sentencing Guideline § 2K2.1(a)(4)(B), imposing a two-level enhancement pursuant to § 2K2.1(b)(1)(A), and imposing a four-level enhancement pursuant to § 2K2.1(b)(6)(B). We agree, and accordingly VACATE Sealy's sentence and REMAND for resentencing.

## I. Background

On February 10, 2015, a Confidential Informant ("Informant") working with the Fort Worth Police Department ("FWPD") made a controlled purchase of marijuana at 5836 Wilkes Drive in Fort Worth, Texas, where DeMarcus Peoples had been living for two months. The Informant observed two black males and three firearms in the house, where he purchased .15 ounces of marijuana from the two males and then left the area.

The next day, FWPD officers executed a search warrant at the house. Upon entry, the officers found Peoples in the southeast bedroom, Sealy in the living room, and two other people in the kitchen and living room areas. The officers secured the house, detained everyone in the residence, and recovered the following items: (1) a Bersa .380-caliber semi-automatic pistol and 2.16[2] ounces of marijuana on a glass table within Sealy's reach; (2) a Ruger .44-caliber revolver and 26.23 ounces of marijuana in a shoebox in the southeast bedroom; (3) a Hi-Point .380-caliber pistol and 6.35 ounces of marijuana in the kitchen; (4) a Norinco SKS semiautomatic rifle with two high-capacity magazines in a hallway closet; and (5) $1,668.00 on Peoples's person and in the southeast bedroom.

The Government subsequently charged Sealy with being a felon in possession of a firearm, namely, the Bersa pistol discovered within Sealy's

---

[2] Possession of 2.16 ounces of marijuana would be a Class A misdemeanor under Texas law. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.121(b)(2).

2

reach.  Sealy pleaded guilty without a plea agreement, and admitted that he knowingly possessed the Bersa pistol, that the pistol had traveled in interstate or foreign commerce, and that he was previously convicted of a felony.

The probation officer prepared a Presentence Investigation Report ("PSR") and concluded that in addition to the Bersa pistol, Sealy should also be held accountable for the Ruger, the Hi-Point, and the Norinco.  After objections by the government, the revised PSR recommended that the district court: (1) set Sealy's base offense level at 20 because the offense involved the Norinco, which was capable of accepting a high-capacity magazine pursuant to § 2K2.1(a)(4)(B); (2) enhance Sealy's offense level by two because the offense involved between three and seven firearms pursuant to § 2K2.1(b)(1)(A); and (3) enhance Sealy's offense level by four because Sealy possessed the Bersa in connection with another felony offense, Possession of Marijuana With Intent to Distribute, pursuant to § 2K2.1(b)(6)(B).   Based in part on these recommendations, the PSR determined that Sealy's total offense level was 25 with a criminal history category of IV, and that his advisory guidelines range of imprisonment was 84 to 105 months.  The PSR also noted that either an upward departure or an upward variance might be warranted because of the inadequacy of Sealy's criminal history score and category.

Sealy objected on the grounds that the PSR erred in concluding that he possessed the Ruger, the Hi-Point and the Norinco, and that the PSR incorrectly concluded that he possessed the Bersa in connection with facilitating marijuana trafficking.  Sealy argued that the facts set forth in the PSR established only that he possessed the Bersa pistol and a misdemeanor quantity of marijuana, and that there were no grounds for an upward departure or variance.  Over Sealy's objections, the district court adopted all of the PSR's recommendations and imposed an upward variance, sentencing Sealy to the statutory maximum of 120 months in prison, as well as three years

3

No. 15-11036

of supervised release. At the conclusion of the sentencing hearing, Sealy objected to his sentence as substantively unreasonable. Sealy timely appealed.

## II. Standard of Review

We review the district court's application of the Guidelines de novo, and its factual findings for clear error. *United States v. Hagman*, 740 F.3d 1044, 1047–48 (5th Cir. 2014).[3] A district court's determination of what constitutes relevant conduct is a factual finding. *Id.* at 1048. "The government must prove sentencing enhancements by a preponderance of the evidence." *Id.* (citation omitted). A factual finding is clearly erroneous when, after reviewing the entire record, we are left with the definite and firm conviction that a mistake has been made. *United States v. Coleman*, 609 F.3d 699, 708 (5th Cir. 2010).

## III. Discussion

First, Sealy contends that the district court clearly erred in concluding that the Government established by a preponderance of the evidence that he possessed the three other firearms (the Ruger, the Hi-Point, and the Norinco) found in Peoples's house. He argues that the district court improperly assigned to him a base offense level of 20 for committing an offense that "involved" the Norinco, which was a firearm capable of accepting a large capacity magazine. U.S. SENTENCING GUIDELINES MANUAL ("U.S.S.G.") § 2K2.1(a)(4)(B) (U.S. SENTENCING COMM'N 2015). Sealy claims that his base offense level should have been 14 pursuant to U.S.S.G. § 2K2.1(a)(6). He further maintains that the district court clearly erred in assigning him a two-level increase pursuant

---

[3] After *Hagman* was decided, we abandoned the use of the equipoise rule in assessing sufficiency of the evidence to sustain a jury verdict which may call into question the discussion of the equipoise rule in *Hagman*. *See United States v. Malone*, ___ F.3d ___, No. 14-31426, 2016 WL 3627319, at *4 n.21 (5th Cir. Jul. 6, 2016); *United States v. Vargas-Ocampo*, 747 F.3d 299, 301-02 (5th Cir. 2014) (en banc) (abandoning use of the equipoise rule in sufficiency of the evidence review of convictions). However, *Hagman*'s discussion of the substantive law of what constitutes possession of a firearm remains undisturbed.

4

to U.S.S.G. § 2K2.1(b)(1)(A) for committing an offense that "involved" between three and seven firearms. *Id.* § 2K2.1(b)(1)(A).

Sealy is correct. When determining how many firearms were involved in an offense, the district court should include all "firearms that were unlawfully sought to be obtained, unlawfully possessed, or unlawfully distributed." *Id.* § 2K2.1, cmt. n.5. Possession of a firearm may be actual or constructive. *Hagman*, 740 F.3d at 1048. To prove actual possession of the Ruger, the Hi-Point, and the Norinco, the Government must demonstrate that Sealy "exercised direct physical control over them." *Id.* To prove constructive possession, the Government must show that Sealy exercised ownership, dominion, or control over the firearms or the premises in which they were discovered. *See id.*; *see also United States v. Houston*, 364 F.3d 243, 248–49 (5th Cir. 2004) (finding no constructive possession of a firearm because there was no evidence that defendant knew of the pistol discovered in his wife's purse). Even jointly occupying a space (which is more than what Sealy did here) is insufficient to show constructive possession. *United States v. Fields*, 72 F.3d 1200, 1212 (5th Cir. 1996).

Here, the PSR does not show that Sealy had actual or constructive possession of the Ruger, the Hi-Point, or the Norinco. When FWPD executed the search warrant, Sealy was in the living room, while the Ruger revolver was in a shoebox in the southeast bedroom, the Hi-Point pistol was in the kitchen, and the Norinco rifle was in a hallway closet. Nothing in the PSR suggests that Sealy ever carried or handled these three firearms; nothing suggests that Sealy even knew that these firearms, two of which were hidden from view,[4]

---

[4] Two of the weapons were clearly out of view: the Norinco rifle in the closet and the Ruger revolver in the shoebox. It is unclear as to the other one: the PSR simply indicates that the Hi-Point pistol was found "in the kitchen." Sealy's objections indicated that it was located in a drawer, so that weapon, too, may have been out of view. Only the Bersa, for which Sealy was convicted, was clearly in his view.

existed.  Moreover, the PSR does not indicate that Sealy lived in or even jointly occupied the house with Peoples.  In sum, the district court clearly erred in concluding that Sealy actually or constructively possessed the Ruger, the Hi-Point, or the Norinco.  As a result, the district court improperly assigned Sealy a base offense level of 20 for possessing a firearm capable of accepting a large capacity magazine, as well as the two-level increase for committing a crime involving between three and seven firearms.

Sealy also argues that the district court improperly enhanced his base offense level by four levels because the Government failed to establish by a preponderance that he possessed the Bersa pistol "in connection with another felony offense," namely, drug trafficking.  U.S.S.G. § 2K2.1(b)(6)(B).  We have stated that when an offender is in "possession only of a 'user' quantity of drugs and no evidence is presented that the defendant is a trafficker, the evidence (under a preponderance of the evidence standard) must support a finding that the firearm facilitated or had the potential to facilitate the drug possession in order to apply the enhancement." *United States v. Jeffries*, 587 F.3d 690, 694 (5th Cir. 2009) (citation omitted); *see also Houston*, 364 F.3d at 249 (noting that committing an offense "in connection with" only a misdemeanor amount of marijuana could not be grounds for an enhancement because the defendant "was not in *felonious* possession of a controlled substance").

We conclude that this enhancement was improperly applied.  Mere presence, standing alone, is insufficient to prove Sealy was a drug trafficker. *See generally United States v. Benbrook*, 40 F.3d 88, 94 (5th Cir. 1994) (addressing sufficiency of the evidence under 21 U.S.C. § 841(d)(2)).  Other than Sealy's mere presence in the house, there were no indications that Sealy was a drug trafficker,[5] and there was nothing to suggest that Sealy used the

---

[5] His prior drug-related felony convictions were for possession of less than one gram of cocaine (one in 1998 and one in 2011).

Bersa in a way that "facilitated or had the potential to facilitate the drug possession." *Jeffries*, 587 F.3d at 694. Sealy was not holding the Bersa when FWPD entered the home; rather, it was discovered on a glass table near where Sealy was standing. The PSR does not state that the Informant who previously purchased marijuana at Peoples's residence and saw "two black males" ever identified Sealy as being present when the purchase occurred. While Sealy was standing in close proximity to a misdemeanor amount of marijuana,[6] vastly larger amounts were discovered elsewhere. Specifically, 26.23 ounces of marijuana were discovered in a shoebox in the southeast bedroom and 6.35 ounces were found in the kitchen. The PSR also shows that $1,668.00 in cash was found in the southeast bedroom or on Peoples's person, but it does not mention any cash being discovered in Sealy's possession. Thus, the district court improperly enhanced Sealy's base offense level by four levels for possessing the Bersa "in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6)(B).

We conclude that the record does not support the determination that Sealy possessed the Ruger, the Hi-Point, or the Norinco, or that Sealy possessed the Bersa in connection with another felony offense. Accordingly, the base offense level of 20 and the two-level and four-level enhancements at issue were applied in error. Although the district court varied upward to the statutory maximum, the Government does not argue, and the record does not reflect, that the district court would have issued the same sentence regardless of the Guidelines range. Thus, the incorrect Guidelines calculation was not harmless error.[7] *United States v. Ibarra-Luna*, 628 F.3d 712, 718 (5th Cir.

---

[6] The PSR notes that Sealy was charged with marijuana possession, but it does not appear that he was ever charged with marijuana trafficking.

[7] Without these errors by the district court, Sealy's total offense level would be 13 and his advisory guidelines range would be 24 to 30 months (rather than 84 to 105 months).

No. 15-11036

2010).  Accordingly, we AFFIRM Sealy's conviction, VACATE Sealy's sentence, and REMAND for resentencing.[8]

---

[8] Because we are remanding for resentencing, we do not address Sealy's argument that the district court abused its discretion in imposing a substantively unreasonable sentence when it sentenced Sealy to the statutory maximum term of 120 months.