IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

No. 17-20397

April 23, 2018

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

  Plaintiff - Appellee

v.

ROBERTSON OMAR WILLIAMS,

  Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:16-CR-00367-1

Before HIGGINBOTHAM, SOUTHWICK, and COSTA, Circuit Judges.

PER CURIAM:*

  Robertson Omar Williams pleaded guilty to unlawful possession of a firearm by a felon. In determining his sentence, the district court held him responsible for two additional firearms. Williams argues that he did not know about, and thus could not have constructively possessed, one of those guns. That third firearm resulted in the application of two sentencing enhancements. It was stolen, which results in a two-point enhancement to the offense level.

---

  * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-20397

U.S.S.G. § 2K2.1(b)(4)(A). As the third firearm attributed to Williams, it also crossed the threshold for a two-point enhancement based on the number of firearms possessed. *Id.* § 2K2.1(b)(1)(A). Concluding there is insufficient evidence that Williams knew of the third firearm, we VACATE the sentence.

**I.**

Houston police officers responded to reports of gunfire near an apartment building. When the officers arrived, they observed Williams standing on the balcony of an apartment holding a gun. Williams fled into the apartment; the officers followed. Williams and several other individuals who had been in the apartment tried to flee but were apprehended. Neither the person who had leased the apartment nor the only resident of the apartment were present when Williams was arrested. The apartment's resident later told investigators that Williams had permission to be there and was the only person who should have been, though he knew that Williams would sometimes bring over friends to "hang out."

Officers conducted a protective sweep of the apartment and found no one else inside, but they did find three firearms: an Intratec, model Tec-9, 9mm caliber semi-automatic pistol on the bedroom bed; a Strum, Ruger and Co., model Mark I, .22 caliber revolver under the bedroom dresser; and a Davis Industries model p-830, .380 caliber pistol in the living room. Officers also found various calibers of ammunition in unspecified locations around the apartment.

After officers advised Williams of his Miranda warnings, he admitted to holding the Intratec while on the balcony. His possession of it and the Davis are undisputed. Only the status of the Ruger, which police later determined was stolen, is at issue. As discussed at the outset, the finding that Williams possessed the Ruger resulted in two sentencing enhancements: two points are added for possession of a stolen firearm and two more are added if the

2

No. 17-20397

defendant possesses between three and seven firearms.     U.S.S.G. § 2K2.1(b)(1)(A), (b)(4)(A).    These enhancements resulted in an advisory Guidelines range of 92 to 115 months in prison.   If the district court had sustained Williams's objection to the third firearm, the range would be only 63 to 78 months.   But the district court disagreed, held Williams responsible for the third firearm, and sentenced him at the low end of the advisory range to 92 months in prison.

## II.

To undo the district court's factual finding that Williams possessed the Ruger, he must show that its ruling was clearly erroneous.  *United States v. Hagman*, 740 F.3d 1044, 1047 (5th Cir. 2014).  The district court did not discuss the issue in detail during sentencing, so we look to the analysis of the Presentence Report it adopted.   In responding to Williams's objection, the probation officer noted that the Ruger was found in the apartment which Williams had permission to use and where he often brought guests.   It also cited police officers' seeing Williams holding the Intratec, which was left in the same bedroom where the Ruger was found under the dresser.

There is no evidence of Williams's actual possession of the Ruger so the government must rely on a theory of constructive possession.   To show constructive possession, the government must prove that Williams, though lacking physical custody, "still ha[d] the power and intent to exercise control over the object."  *Henderson v. United States*, 135 S. Ct. 1780, 1784 (2015); *see also Hagman*, 740 F.3d at 1048 (noting that to prove constructive possession the government must "show that he exercised dominion or control over the firearms or the area in which they were discovered").   The court uses a "common sense, fact-specific approach" to determine constructive possession in these kinds of cases.  *United States v. Meza*, 701 F.3d 411, 419 (5th Cir. 2012).

Williams neither leased nor lived in the apartment where the Ruger was found.  The apartment was leased by an individual who did not live there and was occupied only by the lessee's adoptive brother.  That resident was contacted by Houston police and confirmed that Williams lived elsewhere but had permission to use the apartment.  Williams thus was not the exclusive occupant of the residence, a status that alone may "establish his dominion and control over an item found there." *United States v. Houston*, 364 F.3d 243, 248 (5th Cir. 2004).  This instead is a joint occupancy case.  Because of the possibility that the Ruger belonged to someone else who had control of the apartment, such as the resident or the lessee, a joint occupancy case requires some evidence beyond presence in the location to create "a plausible inference that the defendant had knowledge of and access to the illegal item." *Meza*, 701 F.3d at 419.

So the application of the enhancements comes down to knowledge.  The government tries to establish that knowledge circumstantially by pointing to the fact that Williams was already in the apartment with multiple firearms, that the stolen Ruger was "plainly visible" in the bedroom, and that Williams saw the other ammunition in the apartment.  Even viewed together, this is not enough to infer knowledge by a preponderance of the evidence.

The government's contention that the stolen Ruger was "plainly visible" and that "from the photographer's perspective, one can easily pick out the gun lying next to a pair of tennis shoes" overstates the visibility of the gun.  The

photo below was taken from a low angle by a police-employed photographer who knew the location of the Ruger.



Is the gun "plainly visible?"  Is it more likely than not that Williams would have seen this gun and known that it was there despite not living in the apartment?  Without the benefit of a bright camera flash, the Ruger is tricky to see even to someone who knows its location.  We cannot assume Williams saw this gun based on only the evidence here, just as it would be unreasonable to expect him to know of one tucked away in a shoebox or hidden in a closet. *See, e.g.*, *United States v. Sealy*, 661 F. App'x 278, 281 n.4 (5th Cir. 2016) (finding no constructive possession for purposes of sentencing under U.S.S.G. § 2K2.1 when there was no evidence to suggest that defendant knew two firearms existed when they were hidden from view).

The photo undermines another theory the government has to support Williams's knowledge: that the Ruger was being carried by Williams or his

friends that afternoon but was hurriedly tossed under the dresser when the police arrived and everyone fled. It is hard to imagine, however, that a gun tossed quickly under the furniture would land in the upright position the photo shows.

The argument that Williams likely knew about the Ruger because of the "massive amount of ammunition" also does not fit the record. Of the substantial amount of ammunition seized from the apartment, only one magazine and 49 unfired bullets matched the Ruger's caliber. The record does not say where the .22 caliber ammunition was found or whether Williams would have any reason to be aware of the .22 caliber bullets specifically. Another photo shows some ammunition sitting on top of the dresser under which the Ruger was found, but it is unidentified, and does not appear to be the proper size for the Ruger. Williams has admitted to possession of the 9mm and the .380 caliber pistol. So the presence of ammunition that matches those two firearms does little to support Williams's knowledge of a third firearm in the apartment. Without any information indicating where in the apartment the .22 caliber ammunition was found, there is no knowledge of .22 caliber ammunition to impute to knowledge of the .22 caliber firearm. *Contrast United States v. Gambino-Zavala*, 539 F.3d 1221, 1229 (10th Cir. 2008) (finding, for purposes of U.S.S.G. § 2K2.1, a defendant "on notice" of other firearms in an apartment when ammunition for those other firearms was in plain view in a location the defendant admitted to storing his property).

Lastly, Williams did not mention the Ruger during his post-arrest interview with police despite openly admitting to knowing about and handling the two other guns found at the scene of the arrest. This could suggest either Williams was unaware of the third firearm found at the scene or that he knew it was stolen and would substantially increase his sentence. *See United States v. Houston,* 364 F.3d 243, 248 (5th Cir. 2004) (finding no constructive

possession under U.S.S.G. § 2K2.1 when "[t]he gun was not in plain view, [someone other than the defendant] disclosed the location of the gun, and [the defendant] expressed to the officers his belief that the room contained two, rather than three, firearms."). His silence could cut either way and thus is not strong enough evidence to infer knowledge.

The limited visibility of the gun, the lack of information about where the ammunition was found, and the fact that Williams was only a guest in the apartment mean the evidence of knowledge is too thin to say the government proved possession by a preponderance of evidence. *See, e.g.*, *Sealy*, 661 F. App'x at 282 (vacating a sentencing guideline determination of constructive possession when nothing in the record suggested the defendant had carried, handled, or even knew about the firearms found in the same apartment).

The government does not argue that any error in finding these two enhancements was harmless, nor is there a credible basis for doing so. The gun quantity and stolen firearm enhancements resulting from tying the Ruger to Williams increased his Guidelines range by roughly 30 months. That range was a significant factor in his sentence as the district court sentenced him to the low point of the enhanced range. *See United States v. Ibarra-Luna*, 628 F.3d 712, 718 (5th Cir. 2010). As Williams preserved his objection to this error that influenced his sentence, correction is warranted.

\* \* \*

The sentence is VACATED and the case is REMANDED for resentencing based on the revised guideline range.