**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Freeman LAVERGNE and Mose Collins, Defendants-Appellants.**

No. 86–4212.

United States Court of Appeals,
Fifth Circuit.

Nov. 24, 1986.

John D. Giulio, Baton Rouge, La., for Lavergne.

Anthony J. Marabella, Jr., Rosemary A. Bickford, Baton Rouge, La., for Collins.

Joseph S. Cage, U.S. Atty., Dosite H. Perkins, Jr., Asst. U.S. Atty., Shreveport, La., Thomas B. Thompson, Asst. U.S. Atty., Lafayette, La., for the U.S.

Before GEE, POLITZ and WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

Appellants Freeman Lavergne and Mose Collins appeal their convictions for conspiracy and embezzlement stemming from their activities as business manager and secretary/treasurer, respectively, of the local chapter of a labor union in Lake Charles, Louisiana. We affirm their convictions.

## I.

Appellants Lavergne and Collins were members of the Construction and General Laborer's Local Union No. 207 of the Laborer's International Union of North America [hereinafter "Local 207"], located in Lake Charles, Louisiana. Lavergne served as Local 207's Business Manager and Collins served as its Secretary/Treasurer, both for almost twenty years. Appellants' responsibilities entailed in part travelling to various locations nationwide to carry out the general business affairs of Local 207.

Lavergne occupied a position of trust in the union. He was responsible for the management of the local, and he performed his duties subject to approval by the membership of Local 207. Collins was entrusted with the receipt of all monies payable to Local 207 and to its members as a group, and he had the authority to sign all checks on Local 207's account. He was also responsible for keeping proper financial records and minutes of meetings and for providing the membership with a monthly report detailing the financial condition of the local.

Appellants were indicted with twelve counts of conspiracy and embezzlement in violation of 29 U.S.C. § 501(c) and 18 U.S.C. § 2. Count I of the indictment asserted that from February 1967 through June 1984 appellants used their positions of authority within the union to conspire to embezzle, steal, abstract and convert to their own uses monies, funds, securities, and assets of Local 207. Counts II through VI alleged misuse of appellants'

weekly expense allowances and travel advances for expenses when they left town. Instead of using these funds to pay for their expenses, appellants allegedly had credit cards issued to them on behalf of Local 207, without the knowledge or consent of the membership, and used those credit cards to pay for their expenses, pocketing the funds they withdrew from the treasury for expenses.

Counts VII through XI specified that appellants orchestrated a pay raise for themselves of three percent of the gross monthly income of Local 207 while giving members the impression that the raise was merely an increase of three percent of their salary.

Finally, in Count XII the government alleged that appellant Lavergne used a union credit card to pay $100.00 to Michael Pete, an employee of Calcasieu Truck Lines. Calcasieu is a trucking company owned in part by Lavergne's son Lynn. On August 13, 1981, Comdata, a money wiring service, issued a check for $100.00 to Pete and charged the payment to Local 207's Master Card. Local 207 paid the charge.

Appellants moved for a bill of particulars on Counts II through XI, and the district court denied the motion. After denying appellants' subsequent motions for judgments of acquittal, both appellants were tried and convicted by a jury on all counts. Lavergne and Collins were both sentenced to serve five years in prison on each of Counts I through VI, to be served concurrently, and five years of post-imprisonment probation on Counts VIII through XI. In addition, each appellant was fined $10,000.00 on Count VII and ordered to make restitution payments of $82,256.15. Finally, appellant Lavergne was found guilty on Count XII, for which the five year probationary period served as punishment.

Appellants appeal their convictions, claiming: (1) the district court committed reversible error in failing to grant their motion for a bill of particulars; (2) that the district court failed to instruct the jury properly on the correct use of the summarizing testimony presented by a government

witness and also improperly limited appellants' cross-examination of that witness; (3) the district court incorrectly instructed the jury on the element of fraudulent intent; (4) there was insufficient evidence to support appellants' guilt beyond a reasonable doubt; and (5) the district court improperly denied appellant Lavergne's motion to acquit as to Count XII of the indictment.

## II.

Appellants argue that the district court committed reversible error in failing to grant their motion for a bill of particulars. Demonstrating reversible error in the denial of such a motion is a heavy burden:

> The denial of a bill of particulars is within the sound discretion of the trial judge; this Court can reverse only when it is established that defendant was actually surprised at trial and therefore was prejudiced in his substantial rights.

*United States v. Montemayor*, 703 F.2d 109, 117 (5th Cir.1983), *cert. denied*, 464 U.S. 822, 104 S.Ct. 89, 78 L.Ed.2d 97.

■ Here appellants complain that Counts II through XI of the indictment "merely track the language of the statutes allegedly violated, without giving any hint as to the factual details of the charges."

Appellants argue that without a bill of particulars the indictments were so devoid of information that they violated due process. While we note that the specificity of the indictments is disappointing, we find that appellants' rights were not prejudiced by the denial of their motion.

On their face, Counts II through XI simply recite that appellants embezzled a certain amount of money during a particular period of time. The time frames set out in some of the counts overlap with time frames in other counts. Not one of Counts II through XI contains a description of the acts by which the described embezzlement was accomplished.

An examination of the proof as to counts II through VI, however, reveals that the amounts and dates set out in the indictment correspond to amounts detailed in the list of overt acts in Count I. Each of these five counts corresponds with one of the business trips taken by appellants on which they double-billed their expenses. The time period set out in each count extends from the time when the first advances were given to appellants until the time when the union's credit card bill for the same trip was paid.[1] An examination of Counts VII through XI is similarly revealing:[2] the allegations recited in those counts

---

1. Count I, the conspiracy count, lists eight specific trips taken by appellants on which they both billed their expenses to Local 207 and received advances intended to cover the same expenses. The facts relating to each trip are grouped by number in the list of overt acts. Then each separate act relating to one trip is assigned a letter in the enumeration. For example, number 7 in the list of overt acts relates to appellants' trip to Hollywood, Florida in 1981. Number 7a details the advance payment of appellants' room deposits. Number 7b details cash advances given to appellants before their trip. Number 7c details the expenses billed by appellants on that trip, for which they had already received advances. The total of these amounts is set out in Count II, and the dates in that count correspond to the same trip to Hollywood.

Similarly, Count IV corresponds to the dates and amounts set out in overt act number 11 for appellants' trip to San Francisco; Count V corresponds to the dates and amounts set out in overt act number 12 for appellants' trip to Houston and Las Vegas; and Count VI corresponds

to the dates and amounts set out in overt act number 13 for appellants' trip to Baton Rouge.

Count III generally corresponds to the dates and amounts set out in overt act number 10 for appellants' trip to Palm Springs, although there is a slight discrepancy in the indictment. In Count I, overt act number 10c, the indictment alleges that appellants embezzled a total of $901.92. In Count III, the indictment alleges that appellants embezzled $902.12. We find this 20 cent difference to be de minimus, and, further, that it did not cause surprise or otherwise prejudice appellants in any way. *See infra* Part II.

There is no indication of why the indictment did not include counts relating to overt act number 6 (appellants' 1980 trip to Columbus), number 8 (appellants' June 1981 trip to New Orleans), number 9 (appellants' October 1981 trip to New Orleans), or number 14 (appellants' 1983 trip to New Orleans).

2. Count I recites that appellants Lavergne and Collins received an additional $217,103.76 in compensation after they fraudulently increased

are based on appellants' fraudulent three percent increase in salary, recounted in Count I as overt acts 15 through 17.

The fact that the indictments are only thus decipherable falls short of the precision desirable in an indictment. But a finding that no bill of particulars was needed also rests on the fact appellants have not made the requisite showing of surprise under the *Montemayor* test. In fact, appellants have made no claim that they were surprised and thus prejudiced by the facts used to support the government's charges. The government points out that "on at least three occasions, the evidence used at trial and other items were made available for inspection and copying by Appellants' investigators or attorneys." Appellants thus have failed to demonstrate prejudice in their claim of reversible error in the district court's refusal to grant their motion for a bill of particulars.

 Underlying appellants' argument regarding the bill of particulars is the claim that without such a bill the indictments insufficiently set out the facts and circumstances of the offenses charged. The sufficiency of an indictment is judged by whether (1) each count contains the essential elements of the offense charged, (2) the elements are described with particularity, without any uncertainty or ambiguity, and (3) the charge is specific enough to protect the defendant against a subsequent prosecution for the same offense. *United States v. Gordon*, 780 F.2d 1165, 1171–72 (5th Cir.1986). Thus, while a defendant is "entitled to a plain concise statement of the essential facts constituting the offenses charged, the indictment need not provide him with the evidentiary details by which the government plans to establish his guilt." *Id.*

The indictment of appellants satisfies this standard. It is true that Counts II through XI allege no facts other than the conclusion that appellants embezzled a particular sum of money during a particular time frame. Taken alone, such charges skirt uncomfortably close to failing the third prong of *Gordon*'s test. But these facts are not taken alone. In the first place Count I supplies the requisite particularity. Also, *Gordon* held that a defendant could "rely upon other parts of the present record in the event that future proceedings should be taken against him." *Id.* By relying on the evidence in the record detailing exactly which charges constituted embezzlement, appellants Lavergne and Collins can avoid a subsequent prosecution for these same offenses. These indictments satisfy the conditions for sufficiency we laid out in *Gordon*. Appellants' claim of error in the failure of the district court to grant their motion for a bill of particulars must be denied.

### III.

Appellants' second claim is that the district court failed to instruct the jury properly on the weight of the summarizing testimony presented by a government witness, and also improperly limited appellants' cross-examination of that witness. Under Fed.R.Evid. 1006,[3] "one witness's summary of evidence already presented by prior witnesses" is admissible to aid the jury, as long as limiting instructions accompany the summarizing testimony. *United States v. Lemire*, 720 F.2d 1327, 1347 (D.C.Cir.1983). The witness presenting such testimony is often referred to as a "summary witness." *Id.* at 1346. In the instant case, the district court's limiting instructions, to which appellants object, contained the following

their salaries. By totalling the amounts allegedly embezzled in Counts VII through XI, the same figure of $217,103.76 is reached. The charge of embezzlement in each of Counts VII through XI, then, is based on appellants' receipt of their salaries during the particular period of time set out in the count.

3. Fed.R.Evid. 1006 provides:

The contents of voluminous writings, recordings or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at a reasonable time and place. The court may order that they be produced in court.

warning to the jury: "[The witness's] summary is not the evidence, the evidence is the documents themselves that he has been referring to."

■ At trial, the district court specifically asked appellants' counsel if the above instruction was satisfactory, to which counsel replied, "That's fine." Beyond appellants' failure to object to the instruction when given is the fact that the charge comports exactly with the directions handed down by this Court in *United States v. Diez*, 515 F.2d 892, 905 (5th Cir.1975), *cert. denied*, 423 U.S. 1052, 96 S.Ct. 780, 46 L.Ed.2d 641: "The court should instruct the jury that 'summaries do not, of themselves, constitute evidence in the case but only purport to summarize the documented and detailed evidence already submitted.'" The district court satisfied the *Diez* standard precisely. Appellants' claim that the district court gave an improper cautionary instruction to the jury is denied.

■ As for the claim that appellants' cross-examination of the summary witness was improperly restricted, we find that the court was well within its discretion. The right of cross-examination is not unlimited, and the trial court has broad discretion to determine what is relevant and material to the issues of credibility and bias. The record discloses that appellants' projected questioning was directed at the number of people involved in investigating appellants. This inquiry was properly ruled not relevant to the guilt or innocence of the accused. Further, the court properly ruled that inquiry as to the presence of the summary witness in the courtroom during part of the trial when the witness had the right to be in the courtroom was an attempt to mislead the jury.

In denying a similar claim, this Court held that "[i]nitially, the proponent of the evidence must show that the cross-examination is relevant. [The appellant] failed to make a threshold showing that the evidence ... was relevant ... and we hold

that the trial court did not abuse its discretion in prohibiting cross-examination on this subject." *United States v. Love*, 599 F.2d 107, 109 (5th Cir.1979), *cert. denied*, 444 U.S. 944, 100 S.Ct. 302, 62 L.Ed.2d 312. Similarly, appellants in this case failed to make a showing of relevance. The district court fairly and efficiently exercised its discretion in limiting appellants' counsel's cross-examination.

## IV.

Appellants' third claim is that the district court failed to instruct the jury properly on the element of fraudulent intent. Appellants assert that their good faith belief that their actions benefitted the union should completely absolve them of guilt, and that the district court's failure so to instruct constitutes reversible error. Again, however, this objection was not made at trial.

■ Appellants' contention is wrong, for the district court had no duty to instruct the jury on the good faith defense. Appellants were charged with violating 29 U.S.C. § 501(c) for the unauthorized use of Local 207's funds. There are two types of offenses under § 501(c): those involving the misuse of authorized funds, and those involving the unauthorized use of funds. *United States v. Dixon*, 609 F.2d 827, 829 (5th Cir.1980). In cases of misuse of authorized funds the government must rebut a defendant's good faith defense. But where unauthorized use of funds is involved the government needs only to prove criminal intent. *Id.* Since appellants here were charged with the unauthorized use of funds,[4] the lack of a good faith defense was not an essential element in the prosecution's case.

■ We have recently held that where a charge of improper jury instruction is made,

we may reverse only if the defendant was improperly denied the chance to convey his case to the jury; in other words,

---

**4.** While appellants claim that their use of the union's fund was authorized, *Dixon* teaches that "Authorization which is improperly or fraudulently obtained is also treated as lack of authorization." 609 F.2d at 829.

an abuse of discretion occurs only when the failure to give a requested instruction serves to prevent the jury from considering the defendant's defense.

*United States v. Hunt,* 794 F.2d 1095, 1097 (5th Cir.1986). In the instant case, appellants' primary defense was their good faith belief that their actions were lawful. The substance of that defense was before the jury throughout the entire trial, including at closing argument. Further, the district court's instruction functionally required consideration of the defense of good faith by requiring to the jury to find:

> that the defendant acted with the specific intent to deceive or cheat for the purpose of either causing some financial loss to another, or bringing about some financial gain to oneself [sic] ...

A finding of specific intent to deceive categorically excludes a finding of good faith on the part of appellants. Since the jury was not prevented from considering appellants' good faith, no reversible error could have occurred, whether or not the funds were authorized.

### V.

■ Appellants' fourth claim is that the evidence introduced at trial was insufficient to support their guilt beyond a reasonable doubt. When evaluating the sufficiency of the evidence to support a conviction, the evidence must be interpreted in the light most favorable to the government. *United States v. Cook,* 793 F.2d 734 (5th Cir.1986). Applying that standard to a conviction under § 501(c), we will uphold the conviction only if we find that the evidence "tend[s] inexorably to support an inference of guilt [and is not] equally capable of supporting [a] theory of innocence." *United States v. Belt,* 574 F.2d 1234, 1239 (5th Cir.1978).

■ We find that the record contains sufficient evidence to uphold appellants' convictions. The government presented witnesses and documents sufficient to establish that appellants Lavergne and Collins controlled the business activities of Local 207 and were entrusted with the Local's

funds. The government proved that appellants issued themselves travel advances for expenses, subsequently billed their expenses on the union's credit card, and then used union funds to pay the credit card charges. The jury certainly could conclude that these actions were undertaken with fraudulent intent. *Cf. United States v. Durnin,* 632 F.2d 1297, 1300 (5th Cir.1980).

As for appellants' salary increases, the government offered testimony that the purported authorization by the membership for those increases was not knowingly and intelligently given, and that appellants failed to disclose material information concerning the specific amounts involved in the raises. Both of these evidentiary proofs could properly be considered by the jury in weighing the validity of the authorization relied on by appellants. *See, e.g., Ray v. Young,* 753 F.2d 386, 392 (5th Cir.1985); *United States v. Rubin,* 591 F.2d 278, 282 (5th Cir.1979), *cert. denied,* 444 U.S. 864, 100 S.Ct. 133, 62 L.Ed.2d 87. The jury was presented with testimony sufficient to support a finding that appellants' pay raises were not authorized, but rather were fraudulent exercises of their power as officers of Local 207.

### VI.

Appellant Lavergne's final argument concerns the sufficiency of the evidence to uphold his conviction on Count XII for violating 29 U.S.C. § 501(c) and 18 U.S.C. § 2 by authorizing the payment of $100.00 to Michael Pete, a driver for Calcasieu Truck Lines.

Appellant focuses on the fact that the prosecution never introduced testimony that appellant himself authorized Comdata's issuance of the check to Pete. It is true that neither of the prosecution's two witnesses whose testimony related to Count XII could directly connect appellant with ordering the payment. James Feron Jackson, an employee of Calcasieu, who eventually became the company's Terminal Manager, had no knowledge of the payment at issue. John Ray Hasselbacher, the Director of Corporate Security for Comda-

ta, when asked if he knew who made the phone call to Comdata authorizing the transaction in the instant case, admitted, "I have no idea."

Nevertheless, viewing the evidence in the light most favorable to the government, *see Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), we find that the prosecution presented evidence which a reasonable trier of fact could conclude established guilt beyond a reasonable doubt. *United States v. Hernandez,* 731 F.2d 1147 (5th Cir.1984). First, Hasselbacher detailed the security procedures used by Comdata to ensure that those who order checks drawn on a credit card are actually authorized to use that credit card. Although he could not testify that he knew that appellant personally ordered the check, Hasselbacher did testify that those security procedures were in place at the time the check was issued. A jury could find with reasonable certainty that Hasselbacher's testimony established that no unauthorized person could have successfully ordered the check through Comdata.

Second, as witness Hasselbacher pointed out, had a third party fraudulently ordered the check Comdata would have eventually learned of the fraud when the customer refused to pay the credit card charge. In this case, the customer, Local 207, never complained of any irregularity and in fact paid the credit card bill for the check. Since Lavergne and Collins were the only two members of Local 207 authorized to use the credit card, and were responsible for paying the Local's credit card bills, the jury could conclude beyond a reasonable doubt that appellant Lavergne ordered the payment.

Finally, the prosecution did offer a motive for appellant's improper payment: Jackson, the truck line employee, indicated in his testimony that appellant would sometimes provide financial assistance to his son's business. Together, these facts provide a sound basis for the jury to conclude beyond a reasonable doubt that appellant Lavergne illegally authorized the $100.00 payment to Michael Pete.

## CONCLUSION

Appellants Lavergne and Collins have not shown that the district court committed reversible error in denying their motion for a bill of particulars, in instructing the jury on the use of the summary witness's testimony, in limiting appellants' cross-examination of that witness, or in failing to instruct the jury on the element of fraudulent intent. Appellants have likewise failed to demonstrate that the evidence was insufficient to support their convictions, including Lavergne's conviction as to Count XII of the indictment.

AFFIRMED.